IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| MERCK SHARP & DOHME B.V. and ORGANON USA INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> MYLAN PHARMACEUTICALS INC., MYLAN INC. and MYLAN API US LLC, <br><br> *Defendants*. | C.A. No. 1:20-cv-61 <br><br> (Filed Electronically) |

**MEMORANDUM IN SUPPORT OF MOTION TO STAY THE SECOND-FILED CASE IN THE NORTHERN DISTRICT OF WEST VIRGINIA**

**I.  INTRODUCTION**

This is a second-filed suit that involves identical parties, patents, and products to a first-filed suit pending in the District of New Jersey ("NJ Action").[1] In order to conserve judicial and party resources, Plaintiffs Merck Sharp & Dohme B.V. ("Merck B.V.") and Organon USA Inc. ("Organon") (together, "Merck") respectfully request the Court stay this action in favor of the first-filed suit.

Merck first filed a Hatch-Waxman patent infringement action in the District of New Jersey against the same three Mylan entities named as defendants here. After being notified by one of the Mylan entities that it did not consider venue proper in New Jersey, Merck filed this second suit in West Virginia as a protective measure because of the specific statutory regime of the Hatch-Waxman Act.[2] Merck maintains that venue is proper in the District of New Jersey, where fifteen

---

[1] *Merck Sharp & Dohme B.V. et al. v. Mylan Pharm.* (No. 20-cv-3270-CCC).

[2] As this Court has noted, under the Hatch-Waxman Act, a patent holder who "receives notice that a generic

other actions involving the same patent (U.S. Patent No. RE44,733) and reference product (Merck's Bridion® product) are currently pending. A stay of this second-filed case would preserve the parties' and the Court's resources, and prevent any potential for inconsistent rulings. One of the Mylan defendants, Mylan Pharmaceuticals Inc. ("MPI"), has agreed to proceed in New Jersey under the schedule in the NJ Action until the Mylan defendants' motion to dismiss is resolved, and does not oppose a stay of this action through resolution of a motion to dismiss so long as it is not prejudiced[3]; the other Mylan defendants (Mylan Inc. and Mylan API US LLC) have been silent on these issues in response to Plaintiffs' respeated inquiries about case coordination. All of the criteria for deferring to the NJ Action under the first-to-file rule are present here, and neither Mylan's anticipated motion to dismiss[4] nor MPI's agreement to coordinate discovery changes that fact. Allowing this action to proceed in two separate fora invites inconsistent rulings and would waste the resources of both the Court and the parties. Simply put, it makes practical sense to stay this action at least until the District of New Jersey rules on Mylan's motion to dismiss. Accordingly, Merck respectfully requests that the Court stay the instant action in favor of the first-filed NJ Action, and set a status conference upon resolution of Mylan's motion to dismiss (including any

---

drug manufacturer has filed an ANDA [Abbreviated New Drug Application] with the FDA must file a protective suit against the generic drug manufacturer within forty-five days of receiving such notice. A patent holder's failure to do so within the statutory forty-five day window will result in its loss of all claims to the patent." *Pfizer, Inc. v. Mylan, Inc.*, No. 09-cv-79, 2009 WL 10270101, at *1 (N.D. W. Va. Nov. 20, 2009). Because it is unclear whether a patent holder loses its right to sue if its case is dismissed for lack of jurisdiction after the 45-day window expires, patent holders often file a second protective suit to "hedge against the risk of dismissal[.]" *See id.*; *see also Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1010 (N.D. Ill. 2009).

[3] MPI has informed Plaintiffs that it does not oppose a stay during the pendency of the motion to dismiss in the NJ Action "if the parties can agree to have the WV court enter a procedural schedule and provide a trial date . . . ." Plaintiffs believe that it would be premature to set a schedule and trial date and instead request a status conference upon resolution of Mylan's motion to dismiss in New Jersey.

[4] Mylan's response deadline is currently June 22, 2020. *See* Text Order, NJ Action, No. 20-cv-3270-CCC (D.N.J. June 6, 2020), ECF No. 10.

potential appeal) to determine how, if at all, this case should proceed.

## II.   FACTUAL BACKGROUND

This action (the "WV Action") is the second of two identical patent infringement actions brought by Merck against Mylan, asserting U.S. Patent No. RE44,733 (the "'733 patent") covering Merck's Bridion® (sugammadex) Injection drug products ("Bridion®").  Both cases arise under the Hatch-Waxman Act, and, in each case, Merck has alleged that Mylan has infringed and will infringe the '733 patent, which is listed in the FDA's Orange Book for Bridion®, by seeking to engage in the commercial manufacture, importation, use, and/or sale of a generic version of Bridion® before the expiration of the '733 patent.  Compl. ¶ 1, ECF No. 1.  Bridion® is a novel agent used to reverse neuromuscular block induced by certain blocking agents after surgery, allowing for more rapid and consistent recovery from anesthesia.  *Id.* ¶ 41; Compl. Ex. C, ECF No. 5-2 (providing current prescribing information).

Merck filed the NJ Action on March 25, 2020, after receiving notice that Mylan had filed Abbreviated New Drug Application ("ANDA") No. 213915.  *See generally* Compl., NJ Action, No. 20-cv-3270-CCC (D.N.J. Mar. 25, 2020), ECF No. 1.  That action was filed within 45 days from receipt of Mylan's notice of Paragraph IV certification, and thus triggered the automatic stay of FDA approval of Mylan's ANDA Products under the Hatch-Waxman Act.  It should be noted that in this matter, the automatic regulatory stay has a duration of approximately 40 months (longer than the more typical 30 months) in light of the fact that the reference product, Bridion®, and the patent at issue involve a new chemical entity.[5]  Thus, assuming the case remains unresolved, the

---

[5] If the patent owner brings suit within 45 days of its receipt of notice of the ANDA filing, the patent owner is typically entitled to a default automatic stay period of 30 months, in which the FDA is prohibited from approving the generic product (absent resolution of the case).  *See* 21 U.S.C. § 355(j)(5)(B)(iii).  However, in the case of innovator products for which "no active ingredient (including any ester or salt of the active ingredient) of which has been approved," the typical "30-month" stay is "extended by such amount of time (if any) which is required for seven and one-half years to have elapsed from the date of approval" of the

FDA may not approve any generic version of Bridion® at least until June 15, 2023.

In addition to the NJ Action, Merck brought fifteen related actions—involving similar issues of infringement and validity of the '733 patent[6]—in the District of New Jersey ("NJ Cases"). All sixteen of these cases were filed between January 31, 2020, and March 12, 2020, and are pending before Judge Cecchi and Magistrate Judge Falk.[7]  Judge Falk has ordered a consolidated scheduling conference for all defendants, including Mylan, for July 1, 2020.  *See* Letter Order, NJ Action, No. 20-cv-3270-CCC (D.N.J. May 12, 2020), ECF No. 5.  To date, twelve of the fifteen defendant groups in these actions have already answered without contesting venue or personal jurisdiction, and no defendant other than Mylan has indicated an intent to do so.

On March 17, 2020, Mylan indicated to Merck that it disputes that venue is proper in the District of New Jersey with respect to at least Mylan Pharmaceuticals Inc.  *See* Ex. A.  Because a successful motion to dismiss for improper venue by Mylan could cause Merck to lose the automatic stay pursuant to 21 C.F.R. § 314.107, Merck filed the WV Action on April 2, 2020 out of an

---

product.  *See* 21 U.S.C. § 355(j)(5)(F)(ii).  That extended date here is June 15, 2023.

[6] Merck has also asserted related U.S. Patent No. 6,949,527 against defendants Aspiro Pharma Limited, Mankind Pharma Limited, and LifeStar Pharma LLC in the New Jersey Actions.

[7] *Merck Sharp & Dohme B.V. v. Aspiro Pharma Ltd.*, No. 20-cv-3112-CCC (D.N.J. Mar. 20, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. Aurobindo Pharma USA, Inc.*, No. 20-cv-2576-CCC (D.N.J. Mar. 10, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. Biophore Pharma Inc.*, No. 20-cv-3795-CCC (D.N.J. Apr. 8, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. Dr. Reddy's Labs., Inc.*, No. 20-cv-2909-CCC (D.N.J. Mar. 16, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. Fisiopharma S.R.L.*, No. 20-cv-2964-CCC (D.N.J. Mar. 17, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. Fresenius Kabi USA, LLC*, No. 20-cv-2892-CCC (D.N.J. Mar. 16, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. Gland Pharma Ltd.*, No. 20-cv-2750-CCC (D.N.J. Mar. 12, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. Lupin Ltd.*, No. 20-cv-2786-CCC (D.N.J. Mar. 13, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. Mankind Pharma Ltd.*, No. 20-cv-2787-CCC (D.N.J. Mar. 13, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. MSN Labs. Private Ltd.*, No. 20-cv-3314-CCC (D.N.J. Mar. 26, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. Sandoz Inc.*, No. 20-cv-3117-CCC (D.N.J. Mar. 20, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. Sun Pharm. Indus, Inc.*, No. 20-cv-3007-CCC (D.N.J. Mar. 18, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. Teva Pharm. USA, Inc.*, No. 20-cv-2751-CCC (D.N.J. Mar. 12, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. USV Private Ltd.*, No. 20-cv-3072-CCC (D.N.J. Mar. 19, 2020), ECF No. 1; *Merck Sharp & Dohme B.V. v. Zydus Pharm. (USA) Inc.*, No. 20-cv-3068-CCC (D.N.J. Mar. 19, 2020), ECF No. 1.

abundance of caution. Merck's substantive allegations in the Complaint in this action mirror those in the NJ Action. *See generally* Compl., ECF No. 1. Mylan's deadline for responding to the Complaint in the NJ Action and raising this argument is June 22, 2020.

At Merck's request, Merck and Mylan have conferred regarding options to avoid duplication of efforts and the associated burdens on the Courts, parties, and witnesses in maintaining nearly identical parallel litigations. One of the three Mylan defendants, MPI, has agreed to proceed in the NJ Action according to the discovery and case management schedule in the NJ Action, and to a stay of this action,[8] until the motion to dismiss is resolved. The other two Mylan defendants have not yet provided any response on these issues. . Additionally, in the event this case proceeds either prior to or following resolution of Mylan's motion to dismiss, Merck intends to move the Judicial Panel on Multidistrict Litigation to transfer and consolidate this case with the fifteen nearly identical cases pending in the District of New Jersey.[9]

### III. ARGUMENT

It is well accepted that multiple ongoing actions addressing the same issues is problematic for both litigants and courts. *Massey Energy Co. v. Am. Int'l Specialty Lines Ins. Co.*, No. 09-cv-00029, 2009 WL 1034243, at *8 (S.D. W. Va. Apr. 16, 2009) ("The obvious problems of piecemeal litigation are enhanced in this case by the multitude of actions addressing the same issues."). To avoid these problems here, the Court should stay this second-filed case in favor of the first-filed NJ Action under either the first-to-file rule or its inherent power, each of which provides an independent basis for a stay.

---

[8] As noted above, MPI seeks a case schedule and trial date in order to consent to a stay; Plaintiffs view the setting of a schedule and trial date as premature while the motion to dismiss is pending.

[9] Hatch-Waxman cases are "particularly well-suited for transfer under Section 1407." *In re Rosuvastatin Calcium Patent Litig.*, 560 F. Supp. 2d 1381, 1383 (J.P.M.L. 2008).

NAI-1513420419v15

### A. The Court Should Stay This Case Pursuant To The First-To-File Rule

When substantially identical cases are filed in two separate courts, the first-to-file rule directs the court hearing the second-filed case to defer to the court of first filing by, for example, staying the second-filed case. *Pfizer, Inc. v. Mylan, Inc.*, No. 09-cv-79-IMK, 2009 WL 10270101, at *2 (N.D. W. Va. Nov. 20, 2009). As this Court has stated, "[t]he first-to-file rule is an equitable doctrine traditionally standing for the proposition that '[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it.'" *Id.* at *1 (quoting *Smith v. McIver*, 22 U.S. 532, 535 (1824)). "Under the first-to-file rule, 'the first suit should have priority, absent the showing of balance of convenience in favor of the second action.'" *Cox v. Air Methods Corp.*, No. 17-cv-04610-DAF, 2018 WL 2437056, at *3 (S.D. W. Va. May 30, 2018) (citing *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974) (quotations and citations omitted)). The policies underlying "the first-to-file rule are the avoidance of duplicative litigation, the promotion of uniformity of results, and the conservation of judicial resources." *Pfizer*, 2009 WL 10270101, at *2.

The first-to-file rule arises commonly in Hatch-Waxman litigation given the "peculiar enforcement requirements of the Hatch-Waxman Act, which place incredible risks on patent holders." *Id*. That is, it is necessary for a Hatch-Waxman plaintiff to file a second, "protective" suit where it becomes aware of a potential challenge to its venue of choice; the protective suit ensures that the automatic stay contemplated by the Hatch-Waxman regime remains in place and that there will be a forum to litigate the dispute prior to any FDA approval of ANDA products. *See*, *e.g.*, *Celgene Corp. v. Abrika Pharm., Inc.*, No. 06-cv-5818-SDW, 2007 WL 1456156, at *4 (D.N.J. May 17, 2007). Put differently, a protective suit is filed to prevent the potential loss of the automatic stay if the first-filed case is dismissed for lack of venue or jurisdiction after the 45-day period.

Courts consider three factors when determining whether the first-to-file rule applies: "[1] chronology, [2] identity of parties, and [3] similarity of issues." *See Pfizer*, 2009 WL 10270101, at *2. All three factors are present here. First, the NJ Action was filed first (March 25, 2020), and the WV Action filed second (April 2, 2020). Second, all parties in the first-filed NJ Action are identical to the parties in this case. *Compare* Compl., ECF No. 1, *with* Compl., NJ Action, No. 20-cv-3270-CCC, ECF No. 1. Third, the substantive allegations—involving the '733 patent and Merck's Bridion® product—are identical in both actions and arise from the same act of Mylan's ANDA submission to the FDA. *Id.* Thus, all three elements are satisfied, and "the first-to-file rule squarely applies." *Salix Pharm., Ltd. v. Mylan Pharm. Inc.*, No. 14-cv-152-IMK, 2015 WL 13609778, at *3 (N.D. W. Va. Feb. 18, 2015).

Under the circumstances here, Mylan cannot make any credible showing that the first-to-file rule should not be applied, let alone sustain its burden to make this showing. *See MVP Grp. Int'l, Inc. v. Smith Mountain Indus., Inc.*, No. 11-cv-2608, 2012 WL 425010, at *2 (D.S.C. Feb. 9, 2012) (granting motion to transfer to the first-filed district court and stating that, "Typically, the burden is on the movant to show that transfer to another forum is proper, however, the first filed rule shifts this burden to the party seeking adjudication in the second forum."); *NVR, Inc. v. Cincinnati Ins. Co.*, No. 12-cv-3071-CMC, 2013 WL 178431, at *2 (D.S.C. Jan. 17, 2013) (granting motion to transfer to the first-filed district court despite non-movant's choice-of-law and forum non conveniens arguments to disregard the first-to-file rule.) There are no compelling reasons why this Hatch-Waxman dispute would be better situated in West Virginia as opposed to New Jersey, and there is no evidence of any "bad faith" or forum shopping by Merck. *See PDL Biopharma, Inc. v. Sun Pharm. Indus., Ltd.*, No. 07-cv-11709-PVG, 2007 WL 2261386, at *2 (E.D. Mich. Aug. 6, 2007) (finding no "bad faith or forum shopping" where plaintiff filed a

protective action in view of "the extraordinary time limit placed on the filing of suits under the Hatch-Waxman Act"); *Pfizer Inc.*, 640 F. Supp. 2d at 1010 (rejecting argument that because plaintiff chose to file a protective ANDA action, "any effort to avoid litigating" that action evinces bad faith by plaintiff).

Similarly, Mylan's anticipated venue challenge does not diminish the applicability of the first-to-file rule. Courts routinely stay second-filed cases on facts similar to those present here, even when venue is contested in the first forum. *PDL Biopharma*, 2007 WL 2261386, at *2 (granting stay of second-filed patent infringement case where venue was contested in first-filed action). And this Court has continued to grant such stays even following the Supreme Court's revisiting of patent venue law in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017). *See, e.g.*, Order Granting Pls.' Mot. to Stay, Staying the Case, & Directing Parties to File Status Report, *Valeant Pharm. N.A., LLC v. Mylan Pharm., Inc.*, No. 18-cv-184-IMK (N.D. W. Va. Apr. 2, 2019), ECF No. 67. Moreover, the merits of Mylan's motion to dismiss for lack of venue will be decided by the District of New Jersey. Any decisions on the merits of that motion are "best left" to the District of New Jersey. *See Dalb, Inc. v. Nat'l Beverage Screen Printers, Inc.*, No. 16-cv-167-GMG, 2017 WL 11296958, at *2 (N.D. W. Va. Apr. 25, 2017). In short, the mere fact that Mylan intends to pursue a venue defense in New Jersey does not meet the "heavy burden" that Mylan bears to overcome the first-to-file rule. *Z-Man Fishing Prods., Inc. v. Applied Elastomerics, Inc.*, No. 06-cv-2022-CWH, 2006 WL 3813707, at *4 (D.S.C. Dec. 27, 2006).

**B.     The Court Should Exercise Its Inherent Powers To Stay This Case**

In addition to the first-to-file rule, a stay is also warranted under the Court's broad discretionary powers. "The power to stay proceedings is incidental to the power inherent in every court to control disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *see also Clinton*

*v. Jones*, 520 U.S. 681, 706-07 (1997). Many courts have exercised their inherent powers to stay second-filed ANDA cases. *See*, *e.g.*, *Ivax Pharm., Inc. v. AstraZeneca AB*, No. 08-cv-2165-JAP, 2008 WL 4056518 (D.N.J. Aug. 28, 2008).

Here, as with the first-to-file rule, all factors considered by courts in deciding whether to exercise their inherent powers to stay a case weigh in favor of a stay: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *JJK Mineral Co., LLC. v. Swiger*, No. 12-cv-143-IMK, 2013 WL 12371337, at *1 (N.D. W. Va. May 8, 2013) (quotations omitted).

### 1. Staying this case will promote judicial economy

This case is still in its earliest stages. At present, Mylan has not yet answered the Complaint, and the initial scheduling conference with the Court is over a month away. Nor has this Court yet invested judicial resources into this action. Staying this action while the NJ Action proceeds will avoid "duplicative litigation" and "the inevitable waste of judicial and party resources." *See*, *e.g.*, *Pfizer*, 640 F. Supp. 2d at 1010-11; *PDL Biopharma*, 2007 WL 2261386, at *2 (staying second-filed ANDA case and noting that parallel litigation will "waste scarce judicial resources"). Once Mylan's venue motion is decided, this Court can then determine whether and how this case may proceed. And it will have ample time to make that determination given the extended 40-month regulatory stay applicable here (*i.e.*, FDA approval of Mylan's proposed generic product may not occur prior to June 15, 2023).

### 2. Merck will suffer significant hardship and inequity if this action is not stayed

In the absence of a stay of this action, Merck will be forced to expend resources to litigate two identical cases, seeking the same relief in two district courts, at the risk of being subject to inconsistent rulings, merely to protect its right under the Hatch-Waxman regime to an automatic

9

NAI-1513420419v15

stay. Such a situation presents a real and recognized hardship. *See Novartis AG v. Ezra Ventures, LLC*, No. 15-cv-00095-KGB, 2015 WL 4197692, at *5 (E.D. Ark. July 10, 2015) ("The risks inherent in Hatch-Waxman Act cases, the need for uniform application of patent law, and the goal of avoiding duplicative litigation persuade this Court that maintaining the parties' action here in this Court would result in hardship and inequity to Plaintiffs and waste judicial resources.").

### 3. A stay would not prejudice Mylan

Mylan would not be prejudiced by the requested stay. Mylan can pursue all of the same discovery, claim construction arguments, and substantive defenses in the NJ Action that it could pursue in this Court. Should Mylan prevail in its venue motion, no time will be lost: all of the discovery conducted in the NJ Action in coordination with the other NJ Cases will be fully applicable here. Furthermore, MPI has already consented to coordinated discovery in New Jersey, indicating that proceeding with discovery in New Jersey would not be prejudicial to Mylan and would likely preserve Mylan's own resources.

## IV. CONCLUSION

This Court has consistently applied the first-to-file rule and exercised its inherent case management authority in cases where a plaintiff filed a second action as a "protective suit" in order to protect its rights under the Hatch-Waxman Act. Merck respectfully requests that this Court do the same here, and stay this second-filed case in favor of the NJ Action, and set a status conference to review this matter following the resolution of Mylan's venue motion by the District of New Jersey (including any potential appeal).

| | |
|---|---|
| Dated: July 1, 2020 | Respectfully submitted, |
| *Of Counsel*: | /s/ Carrie Goodwin Fenwick |

Sarah A. Geers (*pro hac vice*)
**JONES DAY**
250 Vesey Street
New York, NY 10281
(212) 326-3939


Doug Winnard (*pro hac vice*)
**GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP**
200 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 681-6000

Carrie Goodwin Fenwick (WVSB #7164)
Shanna L. Brown (WVSB #12516)
**GOODWIN & GOODWIN, LLP**
300 Summers Street
Suite 1500
Charleston, WV 25301
Tel: (304) 346-7000
Fax: (304) 344-9692
cgf@goodwingoodwin.com
slb2@goodwingoodwin.com


*Attorneys for Plaintiff*
*Merck Sharp & Dohme B.V.*
*and Organon USA Inc.*

NAI-1513420419v15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| MERCK SHARP & DOHME B.V. and ORGANON USA INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>MYLAN PHARMACEUTICALS INC., MYLAN INC. and MYLAN API US LLC,<br><br>*Defendants*. | C.A. No. 1:20-cv-61<br><br>(Filed Electronically) |

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 1, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Gordon H. Copland
William J O'Brien
STEPTOE & JOHNSON PLLC
400 White Oaks Blvd
Bridgeport, WV 26330
304-933-8162
Fax: 304-933-8183
Gordon.Copland@steptoe-johnson.com
William.Obrien@Steptoe-Johnson.com
*Counsel for Plaintiffs*

                                      /s/ Carrie Goodwin Fenwick
                                      Carrie Goodwin Fenwick (WV# 7164)